## Case No. 12,917.

### SIX HUNDRED AND FOUR TONS OF COAL.

[7 Ben. 525.][1]

District Court, S. D. New York. Dec., 1874.

PRACTICE IN ADMIRALTY — LIEN FOR FREIGHT — PROCEEDS OF CARGO—VALUE.

A cargo of coal brought to the port of New York was delivered to a gas company, under an agreement by the company that they would receive it and hold it or its representative in value subject to the lien of the owners of the ship for freight and demurrage. The company having received the coal and used it, a libel for freight and demurrage was filed against the cargo or its proceeds in their hands. They brought into court a certain amount as the representative in value, claiming that the coal was worth but $4 a ton in the market at the time. A reference being had to the clerk to ascertain whether that sum was the representative in value of the coal, it appeared that the coal was delivered in November, 1873, under a contract made in the February previous between the company and the charterers of the ship for the purchase of 30,000 tons of such coal at the price of $1 75 gold, free on board, at the mines, which would be equal to about $7 a ton in New York; that the coal was gas

[1] [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

coal, for which there was but very little market outside of the gas companies; and that during the months of October and November, 1873, 23 cargoes of similar coal were delivered to the company under the contract, and paid for at contract rates: Held, that the representative in value of this coal was to be determined, not by the market for such coal outside of the contract, but by the contract price.

This was a libel by the owners of the bark Ibis against a cargo of coal brought in the bark from Nova Scotia to New York, and against the charterers, to recover charter money and demurrage alleged to be due on a charter of the vessel. The marshal served the process on the charterers personally, but failed to attach the coal. The libellants then presented to the court affidavits showing that the cargo of coal had been delivered to the New York Gas Light Company under an agreement signed by the president of the company and reading as follows: "We will receive the cargo of coal per bark Ibis, laden under the within charter, subject to the vessel's lien on the same for any moneys which may be due under the said charter party, and we agree to hold the said coal or the representative thereof in value subject to said lien." The affidavits further showed that when the marshal went to attach the coal under the process, the officers of the company told him that the coal had been received by them and consumed. On these affidavits the court gave the libellants leave to file an amended libel, alleging that the coal or the proceeds thereof were in the hands of the gas company, and praying process "against the coal or the proceeds thereof in the hands of the New York Gas Light Company." Process was issued according to the prayer of the amended libel, and, on the return of the process as served on the company, an appearance was entered in behalf of the owners of the proceeds of the coal. The libellants then filed a petition and obtained an order to show cause why the gas company should not bring into court the proceeds of the coal. On the return of this order the gas company appeared and brought into court $1,935 51 and filed an affidavit that this sum, together with $495 49 duties on the coal and $4 60 custom house expenses which the company had paid, constituted the proceeds of this coal. Thereupon, on motion of the libellants, the court referred it to the clerk to ascertain on proofs whether that sum of $1,935 51 was the "representative in value" of the coal, and if not what sum was such representative in value as specified in the agreement under which the company received the coal. On the hearing before the clerk, the libellant gave evidence to show that the coal was delivered in November, 1873, under a contract made in February, 1873, between the New York Gas Light Company and Bird, Perkins & Job, the charterers, for the purchase by the company of 30,000 tons of coal at the rate of $1 75, free on board of vessels at Port Caledonia, N. S. The libellants fur-

ther showed that this was gas coal; that there was but a very small market for that kind of coal in New York outside of the gas companies; that the companies made their contracts in the spring for the year ensuing, the coal to be delivered during the shipping season; that this company received during the month of October and the month of November, 1873, twenty-three other cargoes under the contract above stated; and that the rate of "$1 75 gold, free on board," was equal to about $7 a ton currency in New York. On behalf of the company, evidence was given to show that the two or three similar cargoes of coal sold in the market outside of the contracts of the companies in November, 1873, brought only $4 a ton. The clerk reported that the representative in value of the coal was $2,435 60, being at the rate of $4 a ton, and that he had refused to allow as such representative in value the price agreed upon in the contract above specified. The libellants excepted to the clerk's report because he had allowed only $4 a ton, and had not allowed the price fixed in the contract between the charterers and the company, claiming that what was meant by the words "representative in value" in the agreement under which the company received the coal, was the amount which the company would be called on to pay to the charterers on the delivery of the coal by them to the company under the contract; and that if the question was to be considered as one of market value, the evidence of the receipt of so many cargoes of coal in October and November by the company, and their paying for them under the contracts, fixed the market value, rather than the evidence of one or two occasional sales of similar cargoes about the same time, which were not bought under such contracts.

BLATCHFORD, District Judge. after hearing argument, sustained the exceptions, and sent the report back to the clerk for a new report in accordance with them.

The case proceeded no farther, having been settled by the parties.